**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

HERDMAN TECHNOLOGY LIMITED,
A Canadian Corporation

       Plaintiff,                               Case No.:

v.                                         District Judge:

WILLIAM MARR, an individual,          Magistrate Judge:
SITE DEVELOPMENT GROUP,
a Wyoming Corporation, and SDG LPC, LLC
a Texas limited liability company,

       Defendants.

---

**COMPLAINT AND JURY DEMAND**

      Plaintiff Herdman Technology Limited ("Herdman"), by its undersigned counsel, states the following for its Complaint against William Marr and Site Development Group (collectively "Defendants"):

**Parties, Jurisdiction and Venue**

      1.      Herdman is a Canadian Corporation, with its principal place of business located in Windsor, Ontario, Canada.

      2.      Defendant Site Development Group ("SDG") is a Wyoming corporation, with its principal place of business located in the State of California, and, upon information and belief, its members are residents and citizens of California and Illinois.

      3.      Defendant SDG LPC, LLC ("SDGLPC") is a Texas limited liability company, with its principal place of business located in the State of Texas, and, upon information and belief, its members are citizens of California and Illinois.

4.      Defendant William Marr ("Marr"), the President of SDG, resides in the Chicago, Illinois area and is a citizen of the State of Illinois.

5.      The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) because the parties reside in different states and the amount in controversy exceeds $75,000.

6.      The Court has personal jurisdiction over Defendant Marr as he is domiciled in the state of Illinois. The Court has specific personal jurisdiction over Defendant SDG as it has transacted business within the State of Illinois. The exercise of personal jurisdiction over Defendants comports with principles of due process under the United States Constitution.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## STATEMENT OF FACTS

8.      Herdman is a corporation in the business of manufacturing and supplying fuel and lubricant additives and finished lubricants.

9.      SDG purports to be in the business of selling gasoline, diesel, lubricants and other related products.

**Herdman Is Introduced to SDG and Marr**

10.      In or about 2018, Herdman was introduced to SDG by a strategic partner in Mexico, Lubdeco S.A. de C.V. Mexico ("Lubdeco"), who has had a long relationship with Herdman.

11.      In or about that same time, Marr began having conversations with the principal of Lubdeco, Oscar Lozano ("Lozano") regarding the expansion of Lubdeco's participation in the fuel platform in America.

12.      For that purpose, Lubdeco formed a U.S. affiliate company, LPC America, Inc. ("LPC America") in or about September of 2018.

13.     Another entity, I&C Lub Petro Canada, S.A. De CV (I&C Lub) was formed as a joint venture between Lubdeco and SDG around that same time.

14.     In or about September of 2018 a Memorandum of Understanding ("MOU") was entered into by Herdman and the joint venture between Lubdeco and SDG - I&C Lub. The MOU is attached as **Exhibit A.**

15.     I&C Lub and Herdman entered into the MOU for the purpose of engaging in the purchase and sale of crude oil.

16.     Herdman and SDG also began discussions about a relationship whereby SDG would become the exclusive distributor of fuel additive product called "NORDE" to which Herdman had the rights (the "Distribution Agreement").

17.     On or about February 6, 2019, Herdman and SDGLPC, a single purpose entity, which, upon information and belief, SDG formed for purposes of this relationship, entered into an "Exclusive Distributor Agreement" for SDGLPC to distribute NORDE in the US, Mexico, Central America, South America, Asia and Europe.

18.     Pursuant to the Distribution Agreement, SDGLPC began placing orders with Herdman for purchases of NORDE in February of 2019 and continued to do so through the Fall of 2019.

19.     SDGLPC initially paid Herdman for the first few orders of NORDE that it had placed.

20.     Shortly thereafter, Marr, on behalf of SDG, solicited investment monies from Herdman for what he claimed was a "joint venture" with LPC America to buy and sell diesel and Pale Oil in Mexico (the "Mexico JV").

**Marr and SDG Perpetuate Their First Scheme to Defraud Herdman**

3

21.     On or about November 5, 2018, SDG sent Herdman a "Project Proposal" soliciting funds and detailing LPC America's participation in the Mexico JV (the "Project Proposal"). The Project Proposal is attached as **Exhibit B.**

22.     Induced by LPC America's supposed involvement in the Mexico JV and what it believed to be was going to be a good and ongoing relationship, Herdman wired SDG $110,000.00 on November 6, 2018 per the terms of the Project Proposal to be used for the transactions described therein. The wire receipt is attached as **Exhibit C.**

23.     The Project Proposal stated that Lubdeco had a group of buyers in Vera Cruz, Mexico that were "ready, willing and able" to purchase Pale Base Oil. SDG was to purchase the Pale Base Oil from a separate entity located in Mexico and sell the oil to Lubdeco's exit buyers. See **Exhibit B**.

24.     However, these Lubdeco customers had already pre-paid Lubdeco in advance for the fuel, and those funds were used to purchase the fuel with the profits split between SDG and LPC America.

25.     In fact, on November 6, 2018, the _very day_ Herdman wired $110,000.00 to SDG as an investment in the Mexico JV, SDG sent invoices to LPC America for approximately $140,981.50 in order to obtain payment on the oil purchased for which the customers had already pre-paid. The invoices evidencing these transactions are attached as **Exhibit D.**

26.     The Project Proposal laid out the following terms:

- Funding requirement is by Nov 6th, 2018 to SDG's bank account. Payment will then be sent to vendor and loading with [_sic_] begin Nov 7th.
- SDG & LPC America will guarantee the Investment.
- Distributions will be on the 30th day of each month.
- Term will be 12 months with rolls and extensions to be approved by all parties.
- Cancellation of Investment will require a 90 days' notice to return full investment principal, this is to allow SDG and LPC the time to invoice and receive any stock fuel and maintain the ability to keep the trade.

4

- If the project ends, return of principal is immediate upon receiving payment from the final shipment.

*See* **Exhibit B** at 1.

27.     The Project Proposal was sent via e-mail to Herdman and the subsequent correspondence between the parties made it appear as though Lozano and his company were involved in the Mexico JV.

28.     Correspondence was sent and responded to by an individual impersonating Lozano and other Lubdeco team members, including Juan Perdomo ("Perdomo"), using the following e-mail addresses: olozano@lpcamerica.com and japerdomo@lpcamerica.com.

29.     On November 6, 2018, after Herdman had sent over the executed Project Proposal, "Lozano" replied, "Thanks for your confidence in this project we are sure it will be worth it." The e-mail is attached as **Exhibit E.**

30.     Just one minute later, "Perdomo" replied "Thank You all for the confidence, lets keep the team strong." See **Exhibit E.**

31.     Following Herdman's inquiry, Lozano, who is Director General of Lubdeco, notified Herdman that olozano@lpcamerica.com is not Lozano's e-mail address, japerdomo@lpcamerica.com is not Perdomo's e-mail address, and neither were receiving or sending e-mails from that address in 2018.

32.     Upon information and belief, Marr created the e-mail addresses and was the individual receiving and sending e-mails from that address.

33.     On November 19, 2018, Herdman wired an additional $190,000.00 to SDG for the purposes of investing in the Mexico JV. The wire receipt is attached as **Exhibit F.**

5

34.     Herdman and SDG executed a promissory note on November 19, 2018 for the repayment of the $300,000.00, wired by Herdman (the "Promissory Note"). The Promissory Note is attached as **Exhibit G.**

35.     The Promissory Note provides that it is repayable within 90 days of Herdman providing SDG with written notice of a demand and that all costs, expenses, and expenditures, including the complete legal costs incurred by Herdman in enforcing the Promissory Note will be immediately paid by SDG.

36.     Funds from the Mexico JV never materialized, as Marr told Herdman that the project was not producing results despite "good faith" efforts.

37.     Upon information and belief, Marr never intended to put Herdman's investment funds into the Mexico JV and, in fact, never did. It is believed these funds have been stolen and misappropriated by Marr/SDG.


**Marr and SDG Perpetuate a Second Scheme to Defraud Herdman**

38.     Less than a year later, Marr contacted Herdman with a plan for a new "joint venture" that was to be formed between SDG and Herdman for the purposes of engaging in the business of purchasing, transporting, and selling refined petroleum products from Texas to California.

39.     Having already successfully defrauded Herdman once, Marr/SDG saw Herdman as an easy target to engage in its next fraudulent scheme.

40.     SDG and Herdman executed a Joint Venture Agreement on May 22nd, 2019 (the "JVA"). The JVA is attached as **Exhibit H.**

41.     As provided in the JVA, the joint venture was to commence on May 22, 2019, and was to be effective until August 22, 2019 unless the term was extended upon written approval of both SDG and Herdman. The JVA can also be terminated within 30 days after written notice is provided to the other party as to the termination. SDG was to pay Herdman the capital contribution within ten days after the JVA has terminated. *See* **Exhibit H** ¶ 7 and ¶ 9.

42.     Pursuant to the JVA, Herdman was to make a capital contribution of $350,000.00 to SDG. SDG had already acquired the product for sale as well as the necessary transportation to deliver the product from Texas to California and that was to constitute as SDG's capital contribution. *See* **Exhibit H** ¶ 3.

43.     All profits and losses were to be split equally between Herdman and SDG, with each receiving a 50% share. *See* **Exhibit H** ¶ 6.

44.     Pursuant to that Joint Venture Agreement, Herdman paid an additional $150,000.00 to SDG on June 4, 2019 and, on July 17, 2019 $150,000.00 was rolled over from the Mexico JV investment as it was "not producing results," leaving a balance of $150,000.00 on the Mexico JV investment still open.

45.     SDG executed a personal guaranty for repayment of the $150,000.00. The personal guaranty is attached as **Exhibit I.**  (the "Guaranty").

46.     Pursuant to the Guaranty, SDG was to promptly repay Herdman the full amount of principal and interest when it becomes due according to the terms provided in the JVA, which requires repayment within ten days of the termination of the JVA.

47.     This new "joint venture" outlined in the JVA between SDG and Herdman was also not successful, and Marr supposedly moved to close out the venture on February 6, 2020. The Closure Letter is attached as **Exhibit J.**

48.     Herdman has since made demands for repayment of both the $300,000.00 and the additional $150,000.00 pursuant to the Promissory Note and Guaranty which have gone ignored and unanswered.

49.     Herdman has recently discovered why.

50.     Herdman recently learned from Lozano that the transactions described in the Project Proposal were, in fact, despite Marr's representations to the contrary, successful and were completed using funds obtained from Lubdeco's customers, the end buyers in the transactions.

51.     None of Herdman's funds were used for the transactions described in the Project Proposal or the JVA, and it is believed that they have been stolen and misappropriated by Marr/SDG.

52.     Moreover, SDGLPC placed several orders for NORDE, which were delivered, but for which SDGLPC never paid totaling in excess of $100,000.

53.     Upon information and belief, SDGLPC has no assets and was just yet another vehicle utilized by SDG/Marr to defraud Herdman.

**COUNT I**
**FRAUDULENT MISREPRESENTATION/FRAUDULENT INDUCEMENT**
**(AGAINST ALL DEFENDANTS)**

54.     Herdman incorporates the preceding paragraphs 1 through 53 of this Complaint as if fully restated herein as paragraph 54 of Count I.

55.     In or about September, 2018, Marr, individually, and as the principal officer of SDG, falsely told Herdman that there was an "investment opportunity" as described the Project Proposal.

56.    Upon information and belief, Marr, individually and as the principal officer of SDG, impersonated Lozano via the use of the olozano@lpcamerica.com e-mail address in order to make it appear that LPC America was involved in the supposed Mexico JV throughout the fall of 2018.

57.    From 2018 through 2019, Marr, individually, and as the principal officer of SDG, falsely told Herdman that the $450,000.00 paid would be used to fund the JVA and the transactions laid out in the Project Proposal.

58.    Marr/SDG/SDGLPC also placed several orders for NORDE pursuant to the Distribution Agreement that it never had any intention of paying for.

59.    Marr had full knowledge that these representations were false when made.

60.    Marr/SDG, in making these false representations did so with the intent to induce Herdman to provide funding to both the Project Proposal and the JVA.

61.    Herdman justifiably relied on the false representations made by Marr given its long relationship with Lubdeco and Marr's efforts to deceive Herdman.

62.    Herdman was damaged as a result of Marr's fraud, in an amount to be determined at trial, but not less than $300,000.00.

63.    Marr personally participated in SDG/SDGLPC's fraudulent acts such that personal liability against Marr is appropriate.

64.    Marr's fraudulent acts were intentional, willful, and wanton, such that punitive damages are appropriate.

WHEREFORE, Herdman respectfully requests that the Court enter a judgment in its favor and against Defendants, in an amount that exceeds $300,000.00, plus punitive damages, interest, fees, and cost of collection, including attorneys' fees, that have accrued, together with all other relief which is just and appropriate under the circumstances.

## COUNT II
## CONVERSION
## (AGAINST ALL DEFENDANTS)

65.     Herdman incorporates the preceding paragraphs 1 through 53 of this Complaint as if fully restated herein as paragraph 65of Count II.

66.     Herdman has a right to the $300,000.00 in funds which he supplied to Marr on the false pretense that Marr would put these funds toward the specific purposes outlined in the Project Proposal and the JVA.

67.     The $300,000 in funds was never put toward *any* investment opportunity or joint venture and was instead pocketed by Marr for his own personal benefit.

68.     Herdman has an absolute right to immediate possession of such funds.

69.     Herdman has made several demands for the possession of the funds directed toward Marr and SDG, however, these demands have been ignored.

70.     Marr is currently exercising wrongful possession and control over the $300,000.00.

71.     The $300,000.00 is a specific amount and is part of a specified identifiable fund.

72.     Marr's actions were intentional, willful, and wanton such that punitive damages are appropriate.

WHEREFORE, Herdman respectfully requests that the Court enter a judgment in its favor and against Defendants in an amount that exceeds $300,000.00, punitive damages, interest, fees, and cost of collection, including attorneys' fees, that have accrued, together with all other relief which is just and appropriate under the circumstances.

## COUNT III
## BREACH OF CONTRACT
## (AGAINST SDG ONLY)

73.     Herdman incorporates the preceding paragraphs 1 through 53of this Complaint as if fully restated herein as paragraph 73 of this Count III.

74.     The Promissory Note is a valid, binding and enforceable contract between SDG and Herdman.

75.     Herdman has performed all of its obligations required by the Promissory Note.

76.     SDG breached the Promissory Note by failing to pay the remaining $150,000 balance left on the Promissory Note within 90 days of Herdman providing the Borrower with written notice of demand.  *See* **Exhibit G** ¶ 2

77.     Herdman has demanded that SDG comply with the Promissory Note, but SDG has failed and refused to do so.

78.     Herdman has been damaged by SDG's breach of the Promissory Note in an amount not less than $150,000.00.

79.     The Promissory Note provides that,

> [a]ll costs, expenses and expenditures, including, and without limitation, the complete legal costs incurred by the Lender in enforcing this Note as a result of default by the Borrower, will be added to the principal then outstanding amount and will immediately paid by the Borrower.

*See* **Exhibit G** ¶ 3

WHEREFORE, Herdman respectfully requests that the Court enter a judgment in its favor and against SDG, in an amount that exceeds $150,000.00, interest, fees, and cost of collection, including attorneys' fees, that have accrued, together with all other relief which is just and appropriate under the circumstances.

## COUNT IV
## BREACH OF CONTRACT
## (AGAINST SDG ONLY)

80.     Herdman incorporates the preceding paragraphs 1 through 53 of this Complaint as if fully restated herein as paragraph 80 of this Count IV.

81.     The personal guaranty executed by Marr on behalf of SDG is a valid, binding, and enforceable contract between Herdman and SDG.

82.     The Guaranty required that SDG promptly pay the full amount of principal and interest of the debt as it became due under either the terms and conditions described in the JVA or upon acceleration of the JVA by reason of default. *See* **Exhibit I** ¶ 1.

83.     Herdman has performed all of its obligations under the guaranty.

84.     SDG breached the personal guaranty by failing to pay the $150,000.00 when required as the funds have now become due.

85.     Herdman has demanded that SDG comply with personal guaranty, but SDG has failed and refused to do so.

86.     Herdman has been damaged by SDG's breach of the personal guaranty.

WHEREFORE, Herdman respectfully requests that the Court enter a judgment in its favor and against SDG, in an amount that exceeds $150,000.00, interest, fees, and cost of collection, including attorneys' fees, that have accrued, together with all other relief which is just and appropriate under the circumstances.

**COUNT V**
**BREACH OF CONTRACT**
**(AGAINST ALL DEFENDANTS)**

87.     Herdman incorporates the preceding paragraphs 1 through 53 of this Complaint as if fully restated herein as paragraph 87 of this Count V.

88.     The Project Proposal and the JVA executed by Marr on behalf of SDG both constitute valid, binding, and enforceable contracts between SDG and Herdman.

89.     The Project Proposal required funding by Herdman, in return for which Herdman was to receive distributions on the 30th of every month. *See* **Exhibit B** at 1.

90.     SDG and LPC America were supposedly "guaranteeing" the investment by Herdman, and Herdman was to receive the principal amount of its investment at the time the project ended and/or within 90 days of Herdman cancelling the investment. *See* **Exhibit B** at 1.

91.     The JVA required funding by Herdman in return for which Herdman was to receive 50% of all income and losses of the joint venture. *See* **Exhibit H** ¶ 3

92.     Herdman was also to be repaid its capital contribution of $150,000.00 at the time the joint venture ended and/or within 30 days of notice to terminate the joint venture. *See* **Exhibit I** ¶ 7 and 9.

93.     Herdman has performed all of its obligations under both the Project Proposal and the JVA, namely by providing the funds required therein.

94.     Marr, individually, and on behalf of SDG, breached both the Project Proposal and the JVA by failing to put any of the investment monies provided by Herdman toward the project and the joint venture, respectively.

95.     Herdman has demanded that Marr and SDG comply with the terms set out in the Project Proposal and the JVA, but both Defendants have failed and refused to do so.

96. Herdman has been damaged by Marr and SDG's breach of the Project Proposal and the JVA.

97. Marr/SDG/SDGLPC also placed several orders for NORDE pursuant to the Distribution Agreement that it/they never had any intention of paying for.

98. Upon information and belief, SDGLPC is a hollow assetless entity that was utilized to abuse the limited liability company format to work a fraud upon Herdman, a creditor and frustrate its ability to collect amounts due pursuant to the Distribution Agreement such that piercing the corporate veil of SDGLPC is appropriate.

WHEREFORE, Herdman respectfully requests that the Court enter a judgment in its favor and against Defendants, in an amount that exceeds $400,000.00, interest, fees, and cost of collection, including attorneys' fees, that have accrued, plus all other relief which is just and appropriate under the circumstances.

## COUNT VI
## UNJUST ENRICHMENT
### *IN THE ALTERNATIVE TO COUNTS III, IV, AND V*
## (AGAINST ALL DEFENDANTS)

99. Herdman incorporates the preceding paragraphs 1 through 53 of this Complaint as if fully restated herein as paragraph 99 of this Count VI.

100. This Count VI is pled as an alternative to Counts III, IV, and V above against Marr and SDG.

101. As a result of Marr's inappropriate and fraudulent actions, both individually and on behalf of SDG, Herdman conferred a benefit on Marr/SDG in the amount of $300,000.00.

102. Marr and SDG have inequitably retained such benefit and have refused to return the amount provided to them by Herdman.

103.     Marr and SDG's failure and refusal to pay the amount due and owing to Herdman has unjustly enriched Marr and SDG and Herdman has been directly and proximately damaged thereby.

WHEREFORE, Herdman respectfully requests that the Court enter a judgment in its favor and against Defendants, in an amount that exceeds $300,000.00, interest, fees, and cost of collection, including attorneys' fees, that have accrued, together with all other relief which is just and appropriate under the circumstances.

## COUNT VII
## SECURITIES FRAUD PURSUANT TO 815 ILCS § 5/1, et seq.
## (AGAINST ALL DEFENDANTS)

104.     Herdman incorporates the preceding paragraphs 1 through 53 of this Complaint as if fully restated herein as paragraph 104 of this Count VII.

105.     Pursuant to 815 ILCS § 5/2.1, Herdman's investment in the transactions described in the Project Proposal and the JVA were securities since they were sought as investments in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others.

106.     Marr/SDG violated 815 ILCS § 5/12 by offering the sale of a security to Herdman, its investment in the Project Proposal and the JVA, induced by materially false statements that Herdman's funds would be used for the purposes and as described in the Project Proposal and the JVA.

107.     Herdman's funds were not used as represented by Marr and SDG.

108.     Pursuant to 815 ILCS § 5/13, Marr and SDG are liable to Herdman for the full amount paid, together with interest from the date of payment.  Further, Marr and SDG are liable to Herdman for all costs together with reasonable fees and expenses of its attorney.

WHEREFORE, Herdman respectfully requests that the Court enter a judgment in its favor and against Defendants, in an amount that exceeds $300,000.00, plus punitive damages, interest, fees, and cost of collection, including attorneys' fees, that have accrued, together with all other relief which is just and appropriate under the circumstances.

**COUNT VIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(AGAINST ALL DEFENDANTS)**

109.    Herdman incorporates the preceding paragraphs 1 through 53 of this Complaint as if fully restated herein as paragraph 109 of this Count VIII.

110.    At all times relevant to Herdman's transactions with Marr and SDG, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 et seq., was in effect.

111.    At all times relevant to Herdman's transactions with Marr and SDG, Herdman was a "consumer" as defined in Section 1(e) of the The Illinois Consumer Fraud and Deceptive Practices Act.

112.    815 ILCS § 505/2, prohibits "unfair or deceptive acts or practices" in relationship with any trade or commerce.

113.    Such unfair or deceptive acts or practices include the "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." *Id.*

114.    Marr/SDG are engaged in "trade or commerce," because both are regularly engaged in the "sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated." 815 ILCS § 505/1.

115.    Marr, individually, and as the principal officer of SDG, falsely told Herdman that there was an "investment opportunity" as described the Project Proposal.

116.    Upon information and belief, Marr, individually and as the principal officer of SDG, impersonated Lozano via the use of the olozano@lpcamerica.com e-mail address in order to make it appear that LPC America was involved in the supposed Mexico JV.

117.    Marr, individually, and as the principal officer of SDG, falsely told Herdman that the $450,000.00 paid would be used to fund the JVA and the transactions laid out in the Project Proposal.

118.    Marr/SDG/SDGLPC also placed several orders for NORDE pursuant to the Distribution Agreement that it never had any intention of paying for.

119.    Marr concealed and suppressed these material facts by making fraudulent misrepresentations to Herdman.

120.    Marr/SDG, in making these false representations did so with the intent to induce Herdman to provide funding to both the Project Proposal and the JVA.

121.    Marr/SDG therefore violated 815 ILCS § 505/2 by engaging in this fraudulent scheme, and because Herdman was actually damaged by Marr's misrepresentations, Herdman is authorized to recover damages against Marr/SDG pursuant to 815 ILCS § 505/10a.

WHEREFORE, Herdman respectfully requests that the Court enter a judgment in its favor and against Defendants, in an amount that exceeds $300,000.00, punitive damages, interest, fees, and cost of collection, including attorneys' fees, that have accrued, together with all other relief which is just and appropriate under the circumstances.

Respectfully submitted,

SCOTT & KRAUS, LLC

*/s/ Miles V. Cohen*
Miles V. Cohen
Counsel for Plaintiff
150 South Wacker Drive
Suite 2900
Chicago, IL 60606
ARDC # 6242698
Ph:  (312) 327-1059
mcohen@skcounsel.com

JAFFE, RAITT, HEUER & WEISS, P.C.

Ethan R. Holtz (P71884)
Emily M. Mayer (P78956)
Counsel for Plaintiff
27777 Franklin Road, Ste. 2500
Southfield, MI 48034
Ph:  (248) 351-3000
Fax:  (248) 351-3082
eholtz@jaffe.law.com
emayer@jaffelaw.com
(pending pro hac vice application)

Dated: July 21, 2021